# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR HENDRIX, JR., ) | 1:04-cv-06180-TAG HC |
| ) | |
| Petitioner, ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1) |
| ) | |
| vs. ) | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT |
| ) | |
| J. SOLIS, Warden, ) | |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL HISTORY

Petitioner is in custody of the California Department of Corrections and Rehabilitation as a result of a conviction in the Superior Court of California, County of Kern (the "Superior Court") of possession of cocaine base for sale (Cal. Health & Safety Code § 11351.5). (Lodged Document ("LD") 7, Clerk's Transcript on Appeal ("CT") 237).   Petitioner was sentenced to an aggregate determinate term of thirteen years.  (CT 237).[1]

Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"). (LD 1).  Petitioner raised two single issues in his direct appeal; (1) whether he

---

[1] Petitioner was sentenced to the middle term of four years on Count 1, which was then doubled pursuant to a true finding for a prior "strike" conviction.  (CT 234).  Petitioner also received a consecutive five-year enhancement pursuant to Cal. Pen. Code § 667(a).  (Id.).  A one-year enhancement pursuant to Pen. Code § 667.5(b) was stayed and an additional five-year enhancement under Cal. Pen. Code § 186.22(B)(1) was stricken.  (Id.).

1 was denied due process and the effective assistance of counsel on appeal when the state court
2 refused to review the sealed "Pitchess" [2] materials relating to complaints against police officers;
3 and (2) whether the state court violated Petitioner's due process rights by refusing to declare a
4 mistrial after a police witness twice mentioned Petitioner's parole status during trial testimony.
5 (Id.).  On December 23, 2003, the 5th DCA affirmed Petitioner's conviction in an unpublished
6 opinion.  (LD 4).

7      Petitioner timely filed a petition for review in the California Supreme Court raising the
8 same issues.  (LD 5).  On February 26, 2004, the California Supreme Court denied the petition
9 for review.  (LD 6).

10      On August 4, 2004, Petitioner filed the instant petition.  (Doc. 1).  On November 17,
11 2005,  Respondent filed a response to the petition.  (Doc. 18).  On May 15, 2006, Petitioner filed
12 his traverse.  (Doc. 29).  Respondent concedes that Petitioner's grounds for relief have been fully
13 exhausted.  (Doc. 18, p. 2).

14                    **FACTUAL BACKGROUND**

15      Gary Carruesco, a Bakersfield Police Officer, testified that on November 2, 2001, at
16 around 5:30 p.m., he and his partner, Officer Woolard, observed Petitioner and another male in
17 front of the residence at 920 K Street. (LD 8, Reporter's Transcript (RT) 118-122).  Carruesco
18 told Woolard, the driver of the patrol car, to stop a short distance away, after which Carruesco
19 got out of the patrol car and instructed Woolard to drive around the block.  (RT 122-123).
20 Carruesco intended to contact the two males.  (RT 123).  However, when Carruesco arrived at
21 920 K Street, Petitioner was no longer present.  (Id.).

22      When Officer Woolard arrived, the two officers tried to locate Petitioner.  (RT 124).
23 Carruesco spoke to a child in front of the residence and asked her where the two men had gone;
24 the child pointed to the first apartment at 920 K street.  (RT 124).  The officers went to that
25 apartment, heard a television, but no one responded at the apartment.  (RT 125).  However, in a
26 bush outside the apartment building, Woolard saw a wadded-up piece of paper.  (RT 193).  Inside

---

[2] Pitchess v. Superior Court, 11 Cal.3d 531 (1974).

2

the paper, Woolard found a plastic baggy with ten individually wrapped pieces of what Carruesco suspected was cocaine base. (RT 193; RT 126). Subsequent testing indicated that the package contained 1.77 grams of cocaine base. (RT 232).

Officer Carruesco ordered Woolard and the other officers who had arrived to leave, and Woolard announced in a loud voice that they were leaving; however, Carruesco remained and went up to the apartment's roof, crawled across the roof to the west edge, and waited for Petitioner to return. (RT 127-128; 198). After about fifteen minutes, Carruesco saw Petitioner stop directly in front of the bush where the drugs had been found by Woolard. (RT 130). As Petitioner looked inside the bush, Carruesco heard a female voice say "[T]hey got your shit." (RT 131). Petitioner looked in a southbound direction and said, "Shit, I'll be back." (RT 132). Petitioner began walking in a northeasterly direction through a dirt field. (Id.).

Bakersfield Police Officer Matthew Peery was patrolling in the area and was given a description of Petitioner. (RT 212). Shortly afterward, Peery saw an individual fitting Petitioner's description walking eastbound on 10th Street approaching the intersection of L Street. (Id.). Peery parked his patrol car in the middle of the intersection and got out of his car. (Id.). Peery then recognized Petitioner as someone who was on "active parole." (RT 213). Peery grabbed Petitioner by his large black jacket, but Petitioner slipped out of the jacket, broke free, and began to run. (RT 214). Another officer, Payne, began chasing Petitioner. (RT 215).

Lucy Quiroz, who lived in the 1000 block of L Street, was going from her car to her house when she saw someone run into her house. (RT 224-225). Quiroz had recently had eye surgery and it was near dark, so she did not get a good look at the person. (RT 225). At trial, Quiroz identified Petitioner as the man who ran into her house. (RT 226). She testified she did not know Petitioner and had never given him permission to go into her house. (Id.). When police arrived, they asked Quiroz if she had seen anyone recently, and she told them about Petitioner. (RT 227).

Melvin Johnson, a Bakersfield Police canine officer, was on patrol with his dog when he was called to Quiroz's residence, upon a report of a suspect in the house. (RT 205). Officer Johnson shouted warnings into the house to surrender or he would send in the dog. (RT 206).

He received no response. (Id.). Johnson then released the dog into the house and the dog eventually reached a closet door in the southwest bedroom. (RT 207). The dog pawed open the door and someone in the closet began yelling. (RT 207). Johnson saw Petitioner in the closet. (RT 208). Petitioner began hitting the dog's head with his fists. (RT 208). Johnson shouted at Petitioner to stop hitting the dog, but he continued. (RT 209). As Johnson tried to kick away Petitioner's fists, the dog bit Johnson. (RT 209). While Johnson tried to release the dog's jaws from his leg, Petitioner crawled deeper into the closet, so Johnson ordered the dog to "re-engage" Petitioner. (Id.). At that point, Johnson was able to arrest Petitioner. (RT 210).

Officer Carruesco also testified based on his experience with street gangs and with the illegal narcotics. Given the amount of cocaine found by Woolard and the way it was packaged, Carruesco testified that he believed the drugs found in the bush had been intended for sale. (RT 135-136). He also testified that he believed Petitioner was an active member of the Westside Crips street gang in Bakersfield. (RT 150). A review of police records by Carruesco indicated that Petitioner had admitted his involvement with the Westside Crips on at least three occasions. (RT 148). Also, Petitioner had tattoos of a "W" and an "S," which, according to Carruesco, were common tattoos of Westside Crips members. (RT 149). On Petitioner's back was a tattoo that said, "Westside." (RT 150).

Officer Carruesco testified that 920 K Street was within the "territory" of the Westside Crips, which he knew, from personal experience, had been investigated as a street gang that sold cocaine base. (RT 140-141). Gang members would typically keep the drugs in several different locations, including "under trash cans, in their mouth, in bushes, in the garage, on their body...." (RT 142). The proceeds of narcotics sales by the gangs were used to purchase guns used later for drive-by shootings, cars for transporting gang members, and clothes. (RT 151). Carruesco opined that a Westside Crips gang member found with 1.77 grams of cocaine base in ten individually-wrapped bindles would be possessing those items for sale to benefit the gang. (RT 152).

///

///

**DISCUSSION**

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d). Accordingly, the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), overruled on other grounds, Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed on August 4, 2004, after the enactment of the AEDPA, and thus it is governed by the AEDPA.

**II. Legal Standard of Review**

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams v. Taylor, 529 U.S. at 412-413.

The first prong of federal habeas review involves the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1). This prong pertains to questions of law and mixed questions of law and fact. Williams v. Taylor, 529 U.S. at 407-410; Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004). A state court decision is "contrary to" clearly established

1  federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme
2  Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a
3  [Supreme Court] decision . . . but reaches a different result." Brown v. Payton, 544 U.S 133, 141
4  (2005), citing Williams v. Taylor, 529 U.S. at 405. A state court decision involves an
5  "unreasonable application" of clearly established federal law "if the state court applies [the
6  Supreme Court's precedents] to the facts in an objectively unreasonable manner." Brown v.
7  Payton, 544 U.S. at 141. Consequently, a federal court may not grant habeas relief simply
8  because the state court's decision is incorrect or erroneous; the state court's decision must also be
9  objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003), citing Williams v.
10 Taylor, 529 U.S. at 409. Section 2254(d)(1)'s reference to "clearly established Federal law"
11 refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time
12 of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412; Lockyer v. Andrade,
13 538 U.S. at 412; Barker v. Fleming, 423 F. 3d 1085, 1093 (9th Cir. 2005).

14       The second prong of federal habeas review involves the "unreasonable determination"
15 clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual
16 findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).
17 Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the
18 petitioner's claims "resulted in a decision that was based on an unreasonable determination of the
19 facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539
20 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual
21 determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is
22 adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so
23 clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v.
24 Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert. denied, Maddox v. Taylor, 543 U.S. 1038
25 (2004). The AEDPA also requires that considerable deference be given to a state court's factual
26 findings. A state court's factual findings are presumed to be correct, and the presumption of
27 correctness may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).
28 ///

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned decision by the state court. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's claims on the merits but provided no reasoned decision on the claims, the federal habeas court must independently review the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Greene v. Lambert, 288 F.3d 1081, 1088 (9th Cir. 2002). Where the state court denied the petitioner's claims on procedural grounds or did not decide the claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's claims de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

### III. Review of Petitioner's Claims

The petition alleges the following grounds for relief:

**Ground One** — **Petitioner's Sixth and Fourteenth Amendment rights were violated by the trial court's denial of Petitioner's Pitchess motion.**

**Ground Two** — **Petitioner's due process rights were violated by the state court's denial of his attorney's motion for mistrial when a police witness mentioned Petitioner's parole status.**

**Ground One** — **Petitioner's Sixth and Fourteenth Amendment rights were violated by the trial court's denial of Petitioner's Pitchess motion.**

Petitioner first alleges that he was denied his rights to due process and a fair trial when the trial court and appellate court refused to permit Petitioner to view the sealed documents submitted to the trial court pursuant to Pitchess v. Superior Court, 11 Cal.3d 531 (1974). (Doc. 1, p. 6). According to Pitchess, in certain circumstances, a defendant may compel discovery of a police officer's personnel files, including citizen complaints. In a variant of this contention, Petitioner also challenges the entire Pitchess process, impliedly contending that he was denied the effective assistance of appellate counsel because on appeal his attorney was "forced to represent petitioner without any knowledge of what occurred during the in cameral [sic] hearing

or what was contained in the file reviewed by the [Court of Appeal]." (Doc. 1, p. 6).[3] These contentions are without merit.

On December 5, 2001, before trial, Petitioner filed a Pitchess motion to compel discovery of "records of complaints" against Officer Carruesco, as well as any complaint investigations and discipline imposed as a result of those complaints. (CT 70-76). The records sought included any "complaints for acts indicating or constituting, dishonesty, false arrest, the fabrication of charges, reports and/or evidence," the dates of filing of such complaints, and whether any disciplinary actions was imposed. (CT 72). The motion asserted that the information was necessary in order to "confront and cross-examine" Carruesco at trial. (CT 74).

Petitioner, however, provided no information, either general or specific, regarding any prior instances of misconduct by Carruesco which might have been the subject of complaints, although defense counsel's declaration listed several "facts" in the case that Carruesco had claimed were true that defense counsel had reason to believe were not true. (CT 73-75).

On January 2, 2002, the trial court conducted an in camera hearing during which the court reviewed the documents requested by Petitioner and found that the file contained "nothing discoverable." (CT 100). Petitioner raised the same argument on appeal, and, as discussed previously, the 5th DCA ordered the appellate record augmented to include the sealed Pitchess documents. (LD 4, p. 4). The Court of Appeal then reviewed those documents in camera and concluded that the trial court had not abused its discretion in refusing to permit Petitioner and his attorney access to Carruesco's file. (Id.). Petitioner maintains that the state courts' rulings on this matter denied him due process and a fair trial. Petitioner is mistaken.

In Pitchess v. Superior Court, the California Supreme Court held that a criminal defendant's fundamental right to a fair trial and an intelligent defense entitled the defendant, who asserted self-defense to a charge of battery on a police officer, to discovery of police personnel

---

[3]Petitioner implies at several points that the Court of Appeal erred not only in failing to provide the Pitchess documents to Petitioner and his appellate counsel but also in failing to review the documents as a reviewing court. (E.g., Doc. 1, p. 6; Doc. 29, p. 7). However, it is abundantly clear from the 5th DCA's unpublished opinion that the Court of Appeal did in fact order the appellate record augmented to include the Pitchess materials and that the appellate court then reviewed the augmented record to determine if the trial court had abused its discretion. (LD 4, p. 4). Accordingly, to the extent that Petitioner's Ground One is premised upon a failure by the 5th DCA to review the documents sought by Petitioner, that argument is not supported by any facts in this record.

records. Pitchess, 11 Cal.3d at 535-537. Four years following the decision in Pitchess, in 1978, the California Legislature enacted California Evidence Code §§ 1043 and 1045 to place specific limitations and procedural safeguards on the disclosure of peace officer personnel files. As noted by the California Supreme Court "[t]he legislation was intended to balance the need of criminal defendants to relevant information and the legitimate concerns for confidentiality of police personnel records." People v. Breaux, 1 Cal.4th 281, 311-312 (1991).

Pursuant to California Evidence Code § 1043, a defendant has access to records of complaints, or investigations of complaints, or discipline imposed as a result of such investigations, "provided that such information is relevant to the subject matter involved in the pending litigation." Cal. Evid. Code §1045(a).

Moreover, due process requires disclosure of all substantial material evidence favorable to an accused. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). The fact that information might help the defense does not establish the materiality required for constitutionally-compelled discovery. United States v. Agurs, 427 U.S. 97, 109-110 (1976). The Supreme Court has expressly ruled that a trial court cannot be required to search through a confidential personnel file without first establishing a basis for a defendant's claim that the file contained material evidence. Pennsylvania v. Ritchie, 480 U.S. 39, 58 (1987).

In the instant case, Petitioner fails to establish materiality or relevance because his claim is based not on any evidence or knowledge of actual incidents contained in the Pitchess files, but on his bald assertion that the undisclosed records *may* have shown that there *may* have been complaints against Officer Carruesco, and that those possible complaints in turn *may* have had some impeachment value for the defense.

In rejecting Petitioner's claim, the 5th DCA, after reviewing the sealed documents in camera, concluded as follows:

///

///

> "We have reviewed the record, including the sealed augmentation. The <u>Pitchess</u> motion here focuses on whether any of Carruesco's personnel records were relevant to credibility issues in this case. Based on our review of the record, the trial court did not abuse its discretion in determining that *none of the documents in Carruesco's personnel file referred to or reflected complaints against Carruesco for acts indicating or constituting dishonesty, false arrest, or fabrication of charges, reports, or evidence*."

(LD 4, p. 4)(Emphasis supplied).

Nothing in the record here persuades the Court that the 5th DCA's conclusion was either contrary to or an unreasonable application of clearly established federal law. Petitioner has presented nothing to support his claim that evidence impeaching Carruesco's credibility was contained in his personnel file; indeed, each state court that reviewed the documents found that nothing having impeachment value was in Carruesco's file. Under those circumstances, Petitioner's rank speculation that the personnel file contained evidence valuable to the defense is simply insufficient to overcome the threshold showing of Evidence Code section 1045, i.e., "that such information is relevant to the subject matter involved in the pending litigation." Cal. Evid. Code §1045(a). Accordingly, the excluded records were not relevant and Petitioner had no constitutional right to access them. <u>Wood v. Alaska</u>, 957 F.2d 1544, 1550 (9th Cir. 1992); <u>see</u> <u>Pennsylvania v. Ritchie</u>, 480 U.S. at 52 (the Confrontation Clause only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."). Petitioner has failed to demonstrate materiality or good cause for the discovery of the requested information. Petitioner's claim that he was denied due process by the state courts' refusal to disclose the <u>Pitchess</u> material must therefore be denied.

Likewise, Petitioner's claim that his appellate counsel was hamstrung by the state court's refusal to provide access to Carruesco's personnel file is similarly without merit. In <u>Pennsylvania v. Ritchie</u>, the Supreme Court addressed an argument similar to the one made by Petitioner, although in the context of a defense request for disclosure of confidential child abuse investigations from Pennsylvania's protective services agency. <u>Ritchie</u>, 480 U.S. at 44. In <u>Ritchie</u>, the Supreme Court held that a defendant's interest in ensuring a fair trial and the State's interests in guarding confidential information were fully protected by submitting the records to the trial court for in camera review. <u>Ritchie</u>, 480 U.S. at 60. The Supreme Court noted that an

"advocate's eye," i.e., review of the documents by defendant's attorney rather than in camera by the court, was not a prerequisite to ensuring a defendant's right to a fair trial, so long as the trial court's discretion was not unbounded and the defendant, if aware of specific information contained in the file, could still request that information directly and argue in favor of its materiality. Id.. The Supreme Court further observed that "[d]efense counsel has no constitutional right to conduct his own search of the States' files to argue relevance." Ritchie, 480 U.S. at 59.

Here, as in Ritchie, the trial court's discretion was not unbounded; to the contrary, the 5th DCA reviewed the trial court's decision for the very purpose of assessing whether the trial court's exercise of discretion was reasonable. Nor was Petitioner precluded under California law from seeking disclosure of *specific* incidents or information in his possession and arguing for its relevance and materiality to his defense, if indeed he was aware of such incidents and information. Accordingly, the mere fact that appellate counsel was unable to directly review the documents himself fails to establish a constitutional claim entitled to habeas relief. Ritchie, 480 U.S. at 60.

Based on the foregoing, the Court concludes that the state court's resolution of Petitioner's Ground One was not contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). According, Ground One is denied.

**Ground Two**       **Petitioner's due process rights were violated by the state court's denial of his attorney's motion for mistrial when a police witness mentioned Petitioner's parole status.**

At trial, Officer Peery, while testifying about making contact with Petitioner, indicated that he had "noted him to be on active parole." (RT 213). Petitioner's trial attorney objected and asked that the answer be stricken, but the trial court overruled the objection. (Id.). On cross-examination, defense counsel asked Peery if he said anything to Petitioner before detaining him, and Peery responded, "I told him that I was going to conduct a parole search." (RT 215). Counsel did not ask any further questions on cross-examination.

///

However, after Peery was excused, defense counsel, out of the presence of the jury, moved for a mistrial based on Peery's two responses about Petitioner's parole status. (RT 220). After pointing out that the second comment was elicited by Petitioner's own attorney, the prosecutor suggested that a limiting instruction would remedy any problem. (RT 221). Defense counsel responded that the damage had been done and a curative instruction would not ameliorate the situation. (RT 222).

The trial court ruled as follows:

> "Well, the Court's going to deny the motion. The Court can cure the situation with an instruction to the jury at the appropriate time, and I think at this juncture, the Court would instruct the jurors at the conclusion of the evidentiary portion of the trial...."

(RT 222-223). Later, the trial court read the following instruction to the jurors:

> "During the testimony of Bakersfield Police Department Officer Matthew Peery, there was an objection to a statement by the officer with regard to an alleged parole status of defendant, Mr. Hendrix. The Court sustains the Defense objection and orders stricken the witness' references to parole status and parole search. *The jurors are instructed to disregard those references. Such references are irrelevant to the factual issues to be decided by the jury, lack of foundation as testified to by the witness and are inadmissible. You must not consider or discuss those references for any purpose*."

(RT 257)(Emphasis supplied).

Petitioner contends that he was denied due process and a fair trial by the trial court's denial of his mistrial motion based on the purported "misconduct" of Peery in mentioning Petitioner's status as a parolee. (Doc. 1, p. 7). Petitioner maintains that because the "entire case rested on the jury's evaluation of the police officer's belief that petitioner was involved in some drug transaction," and that said "misconduct" was "a central component in the evaluation of petitioner's guilt." (Id.). This contention is without merit.

In Mancuso v. Olivarez, 292 F.3d 939, 952 (9th Cir. 2002), the United States Court of Appeals for the Ninth Circuits addressed a situation almost identical to Petitioner's claim. In that case, despite the trial court's prohibition on the use or introduction of evidence regarding the defendant's parole status, a witness at trial improperly referred to a "parole search" of defendant's apartment. Mancuso, 292 F.3d at 949. The trial judge called a recess and reprimanded the witness. Id. at 950. However, the court denied a defense motion for a mistrial, choosing instead to carefully instruct the jury to ignore the witness's statement. Id. at 951.

12

In weighing the propriety of the trial court's denial of the mistrial motion, the Ninth Circuit considered: (1) whether the prejudicial statement was ambiguously phrased; (2) whether the extraneous information was otherwise admissible or merely cumulative of other evidence adduced at trial; (3) whether a curative instruction was given or some other step taken to ameliorate the prejudice; (4) the trial context; and (5) whether the statement was insufficiently prejudicial given the issues and evidence in the case. Mancuso, 292 F.3d at 952. After noting that the comments about defendant's parole status were neither ambiguous nor cumulative, the court reasoned that, "[t]he jury was carefully admonished, however, to ignore Gritzmacher's statement and there is a strong presumption that the court's curative instruction was followed by the jury. See Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1270 (9th Cir. 2000)." Mancuso, 292 F.3d at 952. Also, "[a]ny prejudice that might have occurred as a result was diluted by the copious testimony [in a trial lasting thirty-one days] and satisfactorily ameliorated by the curative instruction." Id..

Similarly, in this case, it is difficult to characterize Officer Peery's testimony regarding Petitioner's parole status as either ambiguous or cumulative of other evidence. Nevertheless, as in Mancuso, the trial court carefully instructed the jury to completely disregard all references to Petitioner's parole status, even going so far as to explain to the jury that such evidence was "irrelevant to the factual issues to be decided by the jury," lacked "foundation as testified to by the witness," and was inadmissible. (RT 257).

Given the facts of the trial recounted previously, and given the strong presumption that the jury followed the court's curative instruction and disregarded Officer Peery's testimony, as was true in Mancuso any prejudice was sufficiently diluted and ameliorated to dispel any possible contention that Petitioner's due process rights were violated.

Moreover, any error is harmless under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), which holds that habeas relief is afforded only when it can be established that the alleged trial error had a "substantial and injurious effect or influence on the jury's verdict." A jury's exposure to facts not in evidence is subject to the Brecht harmless error analysis. Lawson v. Borg, 60 F.3d 608, 612 (9th Cir. 1995). Here, Respondent maintains, and the Court agrees, that

the issue of Petitioner's guilt did not, as Petitioner argues, turn on his status as a parolee, but rather on the nature of the facts surrounding his arrest. After Officer Woolard found the cocaine base, Petitioner was told, "They got your shit." Petitioner did not deny that the drugs were his at that point, but instead immediately left the scene. When confronted by Officer Peery, Petitioner slipped out of his jacket and ran off, thus evidencing consciousness of guilt. When finally cornered in a closet in Quiroz's house, Petitioner fought a police dog to avoid arrest. Together these circumstances present strong evidence that the drugs found by Woolard belonged to Petitioner and that, once the police had recovered his cocaine base, Petitioner fled to avoid capture. Moreover, Carruesco testified that drugs packaged as were those found by Woolard would be used for sale of cocaine base for the benefit of the Westside Crips street gang. Thus, the evidence of guilt on both the substantive charge and the gang enhancement was sufficiently strong that Peery's comments regarding Petitioner's parole status did not, in the context of the entire trial, have a "substantial and injurious effect or influence" on the jury's verdict.

Based on the foregoing, the Court concludes that the state court's resolution of Petitioner's Ground Two was not contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). According, Ground Two is denied.

**ORDER**

For the reasons set forth above, the Petition for Writ of Habeas Corpus (Doc. 1), is DENIED with prejudice.

The Clerk of Court is DIRECTED to enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

Dated: **June 21, 2007**              /s/ Theresa A. Goldner
                                  UNITED STATES MAGISTRATE JUDGE